IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EMILY RINARD,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Case No. 3:16-cv-02218-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

Plaintiff Emily Rinard brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act.

42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI and DIB on November 20, 2012, claiming disability beginning March 1, 2011. Tr. 186-201.[1] Her claim was denied initially on March 5, 2013, and on reconsideration on November 4, 2013. Tr. 66-91, 92-111. A hearing was held April 10, 2015, in Portland, Oregon, before Administrative Law Judge ("ALJ") Steve Lynch. Tr. 42-65. Plaintiff testified, represented by counsel; a vocational expert ("VE"), Erin Martz, also testified. *Id.* On June 12, 2015, the ALJ issued a decision finding plaintiff not disabled under the Act and denying her benefits. Tr. 16-37. Plaintiff requested Appeals Council review, which was denied September 23, 2016. Tr. 1-7, 282-86. Plaintiff then sought review before this Court.[2]

## FACTUAL BACKGROUND

Born in 1981, plaintiff has completed high school, has taken some community college classes, and has a certificate in photography. Tr. 46, 188, 349. Plaintiff has worked as a waitress, barista, café supervisor, and photographer. Tr. 47-49, 77, 220. Plaintiff suffers from bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and posttraumatic stress disorder; she has also experienced depression and anxiety. Tr. 303-05, 336, 368, 402, 417-19, 656, 677. Plaintiff has a history of substance abuse, chiefly methamphetamines ("meth"), but she has also abused alcohol, and used cocaine and marijuana. Tr. 364, 366, 391, 649, 654. Plaintiff has completed outpatient and inpatient therapy for substance use, and in 2011 and 2012 relapsed on meth. Tr. 342-54, 355-57, 376-93, 650-64, 665-70, 714, 719. The last meth relapse

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer. (Docket Nos. 14, 15).
[2] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 4).

evidenced in the record was February 28, 2013. Tr. 810. Plaintiff suffered a "mental breakdown" in 2011, and went on short-term disability. Tr. 48-49, 310, 365, 417. Plaintiff lives with roommates and her ex-significant other. Tr. 50. Plaintiff has a teenage son who lives with her half the week. *Id.* Plaintiff has a criminal history of felony domestic violence and burglary, arising from an incident with her son's father. Tr. 52-53, 417, 559.

## LEGAL STANDARDS

### A. Burden of Proof and Evidentiary Requirements

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

B.   **Five-Step Sequential Process**

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the ALJ must evaluate medical and other evidence to determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant can perform on a regular and continuing basis, despite any limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the ALJ determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, he is not disabled; if he cannot, the burden shifts to the

Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### C. Drug Addiction and Alcoholism Analysis

If the record includes evidence of drug abuse or alcoholism ("DAA"), the ALJ must determine whether, absent substance abuse, the claimant would still be disabled under the Act. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(a), 416.935(a); *Sousa v. Callahan*, 143 F.3d 1240, 1242 (9th Cir. 1998). First, the ALJ must determine that medical evidence from an acceptable medical source establishes the existence of a substance use disorder. Social Security Regulation ("SSR") 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013). Next, considering all the claimant's impairments, including substance use, the ALJ must determine if the claimant is disabled under the Act. *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

The ALJ must then determine if DAA is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). The relevant inquiry is whether the claimant would still be deemed disabled if he were to "stop using drugs or alcohol." *Id.* §§ 404.1535(b)(1), 916.935(b)(1). The determination is made by evaluating "which of [claimant's] current physical and mental limitations . . . would remain if [claimant] stopped using drugs or alcohol and then determin[ing] whether any or all of [claimant's] remaining limitations would be disabling." *Id.* §§ 404.1535(b)(2), 416.935(b)(2). The ALJ thus performs a second five-step sequential evaluation, to determine if the claimant would still be disabled under the Act absent substance use. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

# THE ALJ'S DECISION

The ALJ first found that plaintiff meets the insured status requirements of the Act through December 31, 2017. Tr. 19. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. *Id.* At step two, the ALJ found that plaintiff had the severe impairments of bipolar disorder and methamphetamine dependence. *Id.* The ALJ thus conducted the initial five-step sequential analysis considering all plaintiff's impairments, including substance use. At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment. *Id.* The ALJ found that plaintiff had the RFC to perform work at all exertional levels, limited to simple, entry-level work, with no transactional public interaction; plaintiff also had marked limitations in completing a normal workday or workweek without interruptions from psychological symptoms, and in performing at a consistent pace without unreasonable rest breaks. Tr. 21. At step four, the ALJ found plaintiff unable to perform past relevant work. *Id.* At step five, the ALJ found that there were no jobs that exist in significant numbers in the national economy that plaintiff could perform. Tr. 22.

The ALJ then conducted the DAA analysis, the second five-step sequence that considered plaintiff's limitations assuming she stopped substance use. Tr. 23. The ALJ determined that plaintiff would continue to have the severe impairment of bipolar disorder. *Id.* Plaintiff would not meet or equal a listed impairment. *Id.* Plaintiff would have the RFC to perform work at all exertional levels, but would remain limited to simple, entry-level work, with no transactional public interaction. Tr. 24. In so finding, the ALJ discounted the opinions of treating counselor Aspen Sartoris, M.A., QMHP, LPC, and treating primary care physician Barbara Esselink, M.D. Tr. 35. The ALJ found that plaintiff would continue to be unable to perform past relevant work.

Tr. 36. However, plaintiff would be able to perform jobs that exist in significant numbers in the economy, including laundry worker II and garment sorter. *Id.* Plaintiff's substance use disorder was thus a "contributing factor material of the determination of disability" because she would not be disabled but for substance use. *Id.* Because substance use was a contributing material factor, the ALJ found plaintiff not disabled under the Act and not entitled to benefits. Tr. 36-37.

## ANALYSIS

Plaintiff argues that the ALJ in three regards: (1) improperly discounting the opinions of treating medical providers; (2) failing to address a behavioral health capacities evaluation; and (3) improperly conducting the DAA analysis. The Court finds that the ALJ erred in each regard.

## II. Treating Medical Provider Opinions

Plaintiff argues that the ALJ erred in giving the opinions of treating counselor Aspen Sartoris, M.A., QMHP, LPC, and treating physician Barbara Esselink, M.D., "little weight."

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

1. Treating Counselor Sartoris

Sartoris was plaintiff's counselor at Cascadia Behavioral Health, where plaintiff received outpatient treatment for meth and alcohol abuse. Tr. 650-51, 916-19. Sartoris began treating plaintiff in August 2013, and provided a medical source statement in April 2015. Tr. 916-19.[3] Plaintiff contends that the ALJ gave Sartoris' opinions little weight because she is not an acceptable medical source, never treated plaintiff while plaintiff was sober, and did not distinguish plaintiff's functioning without substance use, and because her opinions contained certain inconsistencies. Pl. Opening Br., at 5 (Docket No. 16); Tr. 35.

A counselor or therapist is not an "acceptable medical source," but is an "other source" who can provide evidence about the severity of a claimant's impairments and how they affect her ability to work. 20 C.F.R. § 404.1513; *Haagenson v. Colvin*, 656 F. App'x 800, 802 (9th Cir. 2016). "Opinions from these ['other'] medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects . . . ." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). Factors the ALJ should consider when determining the weight to give an opinion from these "important" sources include the length of time the source has known the claimant, the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of that opinion, and the source's training and expertise. *Id.*, at *4. "The ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation omitted).

---

[3] The ALJ claimed that Sartoris failed to treat plaintiff between November 2013 and December 2014, Tr. 34, but this seems inaccurate, as Sartoris completed an individual service plan, and apparently saw plaintiff, on June 27 and/or July 23, 2014, Tr. 803-05.

The ALJ has not provided competent, germane reasons to discount Sartoris' opinions. The ALJ writes that Sartoris "has never treated the claimant when she was not using amphetamines and she did not distinguish functioning without amphetamines." Tr. 35. Sartoris began treating plaintiff in August 2013. Tr. 916. Plaintiff had been prescribed amphetamine medication (Adderall, or amphetamine and dextroamphetamine, and Dexedrine, or dextroamphetamine) since 2011 for ADHD. Tr. 327, 833, 839, 905, 911. Plaintiff's urinalysis results understandably indicate positive results for "amphetamines." *See* Tr. 732-40. It was error for the ALJ to refer to plaintiff's use of "amphetamines" without acknowledging prescription use. The ALJ thus erred when finding that Sartoris did not treat plaintiff while she was not using drugs.

Plaintiff's last relapse on meth evidenced in the record was February 28, 2013. Tr. 810. Thereafter, the evidence is only of sobriety. Tr. 53, 760-63, 764-72. *See Young v. Comm'r*, 214 F. Supp. 3d 987, 996 (D. Or. 2016) (holding that the ALJ erred in failing to credit medical opinion rendered during period of sobriety). The ALJ was also incorrect in saying that Sartoris did not distinguish plaintiff's functioning while sober. The form on which Sartoris provided her opinions contained the proviso, "Social Security requires an analysis of functioning independent of any on-going drug or alcohol abuse." Tr. 917. It repeated on the next page, "Again, please assume Ms. Rinard is clean and sober from all illicit drugs and/or alcohol." Tr. 918.

The ALJ stated that there are inconsistencies in Sartoris' opinion, but identifies only one, regarding her evaluation of plaintiff's social or interpersonal functioning. Tr. 35. There is no inconsistency. The moderate limitations in social functioning Sartoris assessed pertained to plaintiff's relationship with her ex-partner and her interpersonal relationships, *see, e.g.*, Tr. 767-68, 771, 804, 927, 929, and which are different from interaction with the general public (where

Sartoris noted no significant limitation), and in turn different from responding to instructions and criticism, and getting along with coworkers, which are specific to the work context, Tr. 918. It was error to treat these areas all together and overlook their distinctions. *See Dennis v. Colvin*, No. 06:14-cv-00822-HZ, 2015 WL 3867506, at *7 (D. Or. June 20, 2015) (distinguishing functional limitations on interaction with general public from interaction with coworkers and interaction with supervisors).

The ALJ did not give legitimate reasons to discount Sartoris' opinions. On remand, the ALJ must reevaluate Sartoris' opinions in accord with the above.

2. Treating Physician Dr. Esselink

Plaintiff began seeing Barbara Esselink, M.D., her primary care physician, on March 3, 2010. Tr. 872-76. Dr. Esselink provided a medical source statement on May 28, 2015, although the last appointment plaintiff had with Dr. Esselink reflected in the record was February 27, 2013. Tr. 910-13, 920-21. The ALJ faulted Dr. Esselink's opinions because the questionnaire "asked that Dr. Esselink indicate whether she agreed with the assessment provided by Ms. Sartoris, which appeared to be in an effort to turn Ms. Sartoris' opinion into an opinion from an acceptable medical source." Tr. 35. The ALJ thus gave Dr. Esselink's opinions little weight "for the same reasons cited above," and because there had been a two year appointment gap. *Id.*

These are not valid reasons to discount Dr. Esselink's opinions. Because Dr. Esselink was a treating physician, and the ALJ has identified no contradictory opinion, the ALJ was required to provide clear and convincing reasons to reject her opinions, *Holohan*, 246 F.3d at 1202, which the ALJ did not do. Treating physician opinions are entitled to controlling weight, absent a finding that they are not well-supported by the record or are inconsistent with substantial evidence. *Orn*, 495 F.3d at 631. Although Dr. Esselink last treated plaintiff in

February 2013, she had treated plaintiff for nearly three years by that point, and the record reflects at least fourteen appointments.[4] This constitutes a considerable treating relationship. *See Watts v. Astrue*, No. 3:10-cv-822-MA, 2011 WL 3159840, at *8 (D. Or. July 25, 2011) (holding that two-year doctor-patient relationship, despite occasional missed appointments, "reflect[ed]" that treating physician "was familiar with plaintiff's medical and psychological impairments").

There is nothing inappropriate with Dr. Esselink reviewing Sartoris' opinions and explaining why she agreed with them. This is not a case of an attempt to transform an "other source" into an acceptable medical source merely by appending a signature to a medical opinion. *Cf. Chapman v. Colvin*, No. 3:13-cv-01299-HA, 2014 WL 4472699, at *5 (D. Or. Sept. 10, 2014); *Doran v. Colvin*, No. 6:14-cv-01669VJE, 2016 WL 4942001, at *7 (D. Or. Sept. 15, 2016). Dr. Esselink was asked to review Sartoris' opinions, to mark whether she agreed with specific limitations that Sartoris assessed, and to explain each area of limitation. Tr. 920-21. The ALJ must thus consider the entirety of Dr. Esselink's opinions as those of a treating physician, and weight it accordingly. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("Our opinions reveal that the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report.").

Additionally, the ALJ's reasons for discounting Sartoris' opinions do not apply to Dr. Esselink's. There was no inconsistency in either opinion. By adopting Sartoris' analysis, Dr. Esselink did distinguish plaintiff's functioning without meth. Also, Dr. Esselink's time treating

---

[4] *See* Tr. 872-76 (Mar. 3, 2010), 869-71 (July 7, 2010), 865-68 (Oct. 20, 2010), 860-64 (Mar. 17, 2011), 856-59 (April 1, 2011), 851-55 (April 20, 2011), 846-50 (May 12, 2011), 842-45 (July 7, 2011), 838-41 (Aug. 17, 2011), 833-36 (Sept. 21, 2011), 828-32 (Nov. 20, 2011), 900-03 (July 25, 2012), 904-07 (Aug. 17, 2012), 910-13 (Feb. 27, 2013).

plaintiff did include periods of sobriety, such as the months near the end of plaintiff's 2011 Cedar Hills treatment, *see* Tr. 414, 828-30, which period the ALJ relied on elsewhere in finding that plaintiff's functioning in certain areas improved during abstinence, Tr. 23. Dr. Esselink in fact reported plaintiff's substance abuse disorder as "in remission" at the time. Tr. 830; *see also* Tr. 322, 323, 326, 328 (meth dependence in remission).

On remand, the ALJ must reevaluate Dr. Esselink's opinions in accord with the above.

### III. Behavioral Health Capacities Evaluation

Plaintiff argues that the ALJ erred in failing to consider the August 2011 Behavioral Health Capacities Evaluation completed by "C. Collette," LCSW, CADC I. Tr. 311-13.

Collette provided a Mental Status Supplemental Questionnaire on August 4, 2011, as part of plaintiff's short-term disability claim. Tr. 311-13. Collette appears to have been plaintiff's Cedar Hills counselor. Tr. 309-13. She provided written answers to questions about plaintiff's limitations and functioning, and also completed a check-the-box page in which she assessed plaintiff's functioning in six areas as "moderately severe" and two as "severe."[5] Tr. 311. Plaintiff argues, and defendant has not disputed, that when comparing the questionnaire's five-point scale with the Commissioner's, "moderately severe" limitations correspond to "marked" limitations, and "severe" to "extreme." *See* 42 U.S.C. § 416.920a(c)(4). This appears to accurately reflect the qualitative descriptions of the impairment levels.[6] The Collette assessment

---

[5] Limitations assessed as "moderately severe": ability to relate to other people, restriction of daily activities, perform work requiring regular contact with others, independent judgment, and supervise/manage others; as "severe": constriction of interests and perform under stress. Tr. 311.
[6] "Moderately severe" is "impairment significantly affects ability to function," which would correspond to the Commissioner's "marked limitation" description of "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited"; "severe" is "extreme impairment of ability to function," which would correspond to the Commissioner's "extreme." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2); Tr. 311.

Page 12 – OPINION AND ORDER

thus notes substantial limitations directly related to plaintiff's ability to work (such as "severe" limitation on "[a]bility to work relative to the attached job description," Tr. 311).

Defendant concedes that the ALJ erred in failing to consider Collette's opinions,[7] but argues this was harmless, because Collette's opinions are "analogous" to Dr. Esselink's and Sartoris', and because the reasons for discounting those opinions apply equally to Collette's. Def. Br., at 12 (Docket No. 17). These arguments lack merit. First, Collette assessed plaintiff in areas where Dr. Esselink and Sartoris did not, such as "constriction of interests" ("severe"/extreme), "makes independent judgment" ("moderately severe"/marked), "respond appropriately to supervision" ("moderate"), and "supervise or manage others" ("moderately severe"/marked), and so the opinions are not identical or duplicative. Tr. 311. Second, the ALJ's reasons for discounting Dr. Esselink's and Sartoris' opinions were erroneous, as discussed above. By not acknowledging that this questionnaire came from a distinct medical provider, the ALJ erroneously ignored a medical opinion in the record. Defendant cannot excuse as harmless the admitted error of failing to consider Collette's opinions. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). On remand, the ALJ must explicitly consider Collette's opinions.

---

[7] In fact, although both parties overlook this, the ALJ did refer to August 4, 2011 therapist notes, which may be the Collette opinion: "In the beginning [of Cedar Hills outpatient], the therapist noted severe limitations in most categories. However, by August 4, 2011, the responses were much improved. The claimant indicated that she was better and had been able to sustain periods of abstinence from meth . . . ." Tr. 28. If this is a discussion of the Collette questionnaire, it emphasizes why the ALJ must explicitly discuss this evidence, because despite this report apparently having been rendered during a period of abstinence from meth, Collette assessed "moderately severe" (marked) limitations in six areas of functioning, and "severe" (extreme) limitations in two, which amount to half the areas assessed. Tr. 311. Further, despite the ALJ's characterization of this assessment as showing plaintiff "much improved," Tr. 28, the assessment, in both the check-the-box sections and prose analyses, shows substantial impairment.

## IV. Drug Addiction and Alcoholism Analysis

In determining plaintiff's RFC during the first five-step sequential process, which considered all plaintiff's impairments including substance use, the ALJ found that plaintiff "would have marked limitation in her ability to complete a normal workday and workweek without interruption from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods." Tr. 21. The VE testified that someone with these marked restrictions (in addition to a limitation to simple entry level work with no transactional public interaction) would be unable to maintain employment. Tr. 61-63. The ALJ found that there were no jobs existing in significant numbers in the national economy that someone thus impaired could perform. Tr. 22-23.

During the DAA analysis, i.e., the second five-step sequential process that assumed no substance use, the ALJ assessed plaintiff's RFC as again limited to simple entry level work with no transactional public interaction. Tr. 24. The only difference from the first RFC is that the ALJ did not assess marked limitations in completing a workday/workweek without interruption from psychological symptoms, or in performing consistently without unreasonable breaks.

As part of the DAA analysis, the ALJ must determine which of a claimant's disabling limitations would remain without substance use. 20 C.F.R. § 404.1535(b). The ALJ provided no explanation for why the key limitations from the first RFC, the marked restrictions in completing a workday without interruptions and performing consistently without breaks, would be alleviated by ceasing substance use. These were the critical limitations in foreclosing plaintiff from employment according to the VE, and were the only difference between the two RFCs, and thus were determinative of disability. Although the ALJ conducted a longitudinal review of the medical record, he never mentioned these limitations during the DAA analysis, nor tied any of

the evidence to these limitations. It thus was error for the ALJ to find these limitations absent from the second RFC without explanation. *See Mustoe v. Colvin*, No. 3:14-cv-00857-AC, 2015 WL 9487990, at *5 (D. Or. Nov. 9, 2015) (holding that ALJ erred in omitting limitations from second RFC analysis without substantial evidence), *report and recommendation adopted*, 2015 WL 9462090 (Dec. 28, 2015).

Defendant's arguments as to why this omission is not reversible error are unavailing. Defendant points to a July 2012 appointment with Dr. Esselink after entering inpatient treatment, where plaintiff presented as calm with normal mood and affect, and Dr. Esselink commented, "This is the best I've seen her, really." Def. Br., at 17 (quoting Tr. 906) (Docket No. 17). Defendant mentions another appointment four months later, in November 2012, where plaintiff said, "I've never felt so normal." *Id.* (quoting Tr. 404). Defendant then notes that plaintiff relapsed in February 2013. *Id.* (citing Tr. 754). These observations fail to address plaintiff's argument that the ALJ erred in concluding without analysis or evidence that she would not have the decisive areas of marked limitation absent substance use. They are neither pertinent arguments nor meaningful evidence. (They also undermine the argument that Dr. Esselink never observed plaintiff while sober.) *See Burden v. Colvin*, No. 6:14-cv-00499-HZ, 2015 WL 4772895, at *10 (D. Or. Aug. 12, 2015) ("[Plaintiff's] 'improvement' while undergoing intensive therapy does not indicate that she is able to sustain competitive employment.").

It was error for the ALJ to assume, without explanation, that plaintiff, without substance use, would have no marked limitations in completing a workday/workweek without interruption or in working at a consistent pace without breaks. The DAA analysis was also based on the erroneous discounting of Sartoris' and Dr. Esselink's opinions, and omission of Collette's. *See Baker v. Astrue*, No. CIV. 07-6332TC, 2009 WL 902349, at *4 (D. Or. Mar. 31, 2009) ("[T]he

ALJ shall then reevaluate all medical evidence and perform a new DAA Analysis and a new five step disability evaluation.") The ALJ must thus redo the DAA analysis, and in doing so assume that the marked limitations would persist, or justify excluding them from the second RFC, and also consider these medical opinions, or provide legitimate reasons to discount them.

## V.   Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted). This "credit-as-true" rule has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s] whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quotations, citations, and alterations omitted). The court may then "remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020. If, "even though all conditions of the credit-as-true rule are satisfied, an evaluation

of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the court should remand for further proceedings. *Garrison*, 759 F.3d at 1021.

At the first step in the credit-as-true analysis, the Court finds that the ALJ erred in considering the opinions of Dr. Esselink, and counselors Sartoris and Colette, and in conducting the DAA analysis. At the second step, however, the Court finds that outstanding issues remain, and that further administrative proceedings would be useful, specifically, on how much weight to assign these medical opinions, and on which limitations would remain if plaintiff ceased substance use, under the DAA analysis. Immediate award of benefits is not justified.

## CONCLUSION

Pursuant to 42 U.S.C. § 405(g), sentence 4, this case is REVERSED and REMANDED for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 12th day of December, 2017.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge